**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**METLIFE AUTO & HOME** and
**METROPOLITAN PROPERTY AND**
**CASUALTY INSURANCE COMPANY,**

                        **Plaintiffs,**                    **1:08-cv-1089**
                                                           **(GLS/DRH)**

        **v.**

**BROAN-NUTONE, LLC; JAKEL**
**MOTORS INCORPORATED;** and
**REGAL-BELOIT CORPORATION,**

                        **Defendans.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

**FOR THE PLAINTIFFS:**
Office of Daniel W. Coffey                 DANIEL W. COFFEY, ESQ.
119 Washington Avenue, 2nd Floor
Albany, NY 12210

**FOR THE DEFENDANTS:**
Goldberg, Segalla Law Firm                 KENNETH M. ALWEIS, ESQ.
5789 Widewaters Parkway                    LISA MARIE ROBINSON, ESQ.
Syracuse, NY 13214

**Gary L. Sharpe**
**District Court Judge**


**MEMORANDUM-DECISION AND ORDER**

## I. Introduction

Plaintiffs Metlife Auto & Home and Metropolitan Property and

Casualty Insurance Company, as subrogees of Steven and Cathy Barber, brought this action against defendants Broan-Nutone, LLC and Jakel Motors Incorporated, asserting claims for breach of warranty, negligence, and product liability.  (*See* Compl., Dkt. No. 1:2.)  Pending is defendants' motion to preclude plaintiffs' expert witnesses, for sanctions based on spoliation, and for summary judgment.  (Dkt. No. 42.)  For the reasons that follow, defendants' motion to preclude is denied, for sanctions is denied, and for summary judgment is granted in part and denied in part.

## II.  Background

On September 12, 2005, a fire occurred at the home of Steven and Cathy Barber located at 59 Columbine Drive, Glenmont, New York.  (*See* Defs. SMF ¶ 6, Dkt. No. 42:4.)  Installed in the second floor bathroom of the Barber's home was a model 668RP fan/light, which was manufactured by defendant Broan-Nutone, LLC.  (*See id.* at ¶ 8.)  Contained within the fan/light was a J238-063-6404 model motor (6404 motor), which was designed, manufactured, and assembled by defendant Jakel Motors Incorporated.  (*See id.* at ¶ 10.)

On the morning of the fire, at approximately 6:45, Nicholas, the Barbers' son, used the second floor bathroom and mistakenly left the

2

fan/light in the "on" position when he left for school.  (*See* Defs. SMF ¶ 29, Dkt. No. 42:4; Pls. Resp. SMF ¶ 29, Dkt. No. 65; Coffey Aff., Ex. C, Incident Report at 2, Dkt. No. 57:3.)  Later, at approximately 7:30 a.m., with no one home at the Barber house, one of the Barber's neighbors saw smoke coming from the house and called 911. (*See* Defs. SMF ¶ 45, Dkt. No. 42:4.)  Another of the Barber's neighbors, Terry Hannigan, a volunteer fireman, heard the 911 dispatch over his pager.  (*See id.* at ¶ 35.)  Seeing the smoke from his bedroom window, Hannigan ran across the street and entered the Barber's home, eventually making his way to the second floor. (*See id.* at ¶¶ 37-39.)  Looking into Nicholas's bathroom, Hannigan saw a light haze of smoke but no flames.  (*See id.* at ¶ 41.)  Hannigan also testified to hearing the sound of "the fire crackling, like wood burning," and to observing "flaky, light material falling down to the bathroom floor from the ceiling of the bathroom."  (*Id.* at ¶¶ 41, 42.)  Hannigan then went downstairs, out the front door, and walked around the house, where he observed flames coming out of the soffit and going around the eaves of the roof in the area above Nicholas's bathroom.  (*See id.* at ¶ 43.)  Upon arriving at the scene, firefighters put out the fire.  (*See id.* at ¶ 47.)

Once the fire was suppressed, the Town of Bethlehem began

investigating its origin and cause.  (*See* Pls. Resp. SMF ¶ 225, Dkt. No. 65:1.)  Investigators ultimately concluded that the fire "started in the light/fan in [Nicholas's] bathroom," and that it was an "electrical fire due to a malfunctioning light/fan in the bathroom."  (Coffey Aff., Ex. C, New York State Incident Report at 2, Dkt. No. 57:3.)

After the Barbers submitted a claim under their homeowners insurance policy, plaintiffs retained Joseph Myers, a certified New York State Level II fire investigator, to conduct an origin and cause investigation.  (*See* Defs. SMF ¶¶ 73, 76, Dkt. No. 42:4.)  Myers's investigation included conducting interviews and two scene inspections, one on September 14, 2005, and the other on September 30, 2005.  (*See* Pls. Resp. SMF ¶ 225, Dkt. No. 65:1.)  Based on his investigation, Myers concluded that the fire originated at the fan/light in Nicholas's bathroom.  (*See id.* at ¶ 355.)  Plaintiffs' also hired electrician Thomas Conlan as an electrical expert on product liability to inspect the scene and examine the light/fan.  (*See id.* at ¶ 111.)  Based on his investigation, Conlan concluded that the fire was the result of an internal assembly defect in the fan/light's motor.  (*See id.* at ¶¶ 99-174.)

On September 5, 2008, plaintiffs, as subrogees of the Barbers,

commenced this action against defendants in New York State Supreme

Court, alleging that the fan/light in Nicholas's bathroom was the cause of

the September 12, 2005 fire.  (*See* Dkt. No. 1:2.)  Plaintiffs asserted claims

for breach of warranty, negligence, and product liability.  (*See id.*)

On October 13, 2008, defendants removed the case to this court based on

its diversity jurisdiction.  (*See* Dkt. No. 1.)  Following discovery, defendants

moved to preclude plaintiffs' expert witnesses and for summary judgment

on plaintiffs' claims.  (Dkt. No. 42:2.)

### III.  Standard of Review

The standard for the grant of summary judgment is well established

and will not be repeated here.  For a full discussion of the standard, the

court refers the parties to its previous opinion in *Bain v. Town of Argyle,*

499 F. Supp. 2d 192, 194-95 (N.D.N.Y. 2007).

### IV.  Discussion

### A.    Preclusion of Experts

Defendants seek to preclude the expert testimony of Joseph Myers

and Thomas Conlan, arguing that Myers and Conlan "lack the qualifications

and necessary foundation to render opinions as to any alleged assembly or

manufacturing defect in the defendants' products."  (Defs. Mem. of Law at

5, Dkt. no. 42:2.)

As to Mr. Myers, his testimony is admissible for the purpose for which it is being offered, namely, to render an expert opinion in the area of fire origin and cause.  While defendants highlight that "Myers ... is not an engineer and has no product manufacturing experience," (Defs. Mem. of Law at 14, Dkt. No. 42:2), plaintiffs do not dispute that point or give any indication that Mr. Myers's testimony is being offered to establish a manufacturing defect, (*see* Pls. Mem. of Law at 14, Dkt. No. 64 ("Plaintiffs do not intend to call Myers as an expert [in] product manufacturing."). ) Rather, as outlined by plaintiffs, (*see id.* at 14-5), and as evidenced by Mr. Myers's expert report, deposition, and curriculum vitae, (*see* Myers Aff., Exs. A & B-1, Dkt. Nos. 60:1 & 60:2; Alweis Aff., Ex. K, Dkt. No. 47:3), Mr. Myers is qualified to testify as an expert in the field of fire origin and cause investigation.  *See* FED. R. EVID. 702; *see also Nimely v. City of New York*, 414 F.3d 381, 395-96 (2d Cir. 2005); *Lappe v. Am. Honda Motor Co.*, 857 F. Supp. 222, 227 (N.D.N.Y. 1994).

Equally important, at this juncture, the court is satisfied that Mr. Myers's opinions are relevant, are based on a reliable methodology, and are consistent with that methodology.  *See Kumho Tire Co. v. Carmichael*,

526 U.S. 137, 152 (1999) ("The objective of [*Daubert*'s gatekeeping] requirement is to ensure the reliability and relevancy of expert testimony."). Specifically, Mr. Myers testified that his investigation included two inspections of the scene of the fire, interviews with the Barbers—which revealed that Nicholas turned the fan/light on, heard a "funny noise," and left the fan/light on—an analysis of burn, smoke, and heat patterns, and an examination of the fan/light and the wiring in the attic.  (*See* Myers Aff., Dkt. No. 60.)  This investigation and the documentation thereof appears to have been conducted in accordance with the professional standards and scientific methodology used by fire investigation experts, which is set forth in the National Fire Protection Association's NFPA 921: GUIDE FOR FIRE AND EXPLOSION INVESTIGATIONS.  *See Royal Ins. Co. of Am. v. Joseph Daniel Constr., Inc.*, 208 F. Supp. 2d 423, 426-27 (S.D.N.Y. 2002) (recognizing the NFPA 921 as a generally accepted standard in fire investigations); *Travelers Prop. & Cas. Corp. v. Gen. Elec. Co.*, 150 F. Supp. 2d 360, 366 (D. Conn. 2001) (same).  Therefore, for these reasons, and because further scrutiny will be available on cross-examination, defendants' motion to preclude Mr. Myers's expert testimony is denied.

    As to Mr. Conlan, defendants challenge his testimony on two bases.

First, defendants contend that Mr. Conlan is not qualified to offer expert testimony as to whether the fan/light suffered from a manufacturing defect. (*See* Defs. Mem. of Law at 7-10, Dkt. No. 42:2.)  And second, defendants critique Conlan's opinions as unreliable, untested, and speculative.  (*See id.* at 10-14.)  At this juncture, and based on the record as it currently stands, the court denies defendants' motion to preclude Mr. Conlan's expert opinion.

While the court appreciates defendants' concerns regarding Mr. Conlan's lack of an engineering background and the potential inconsistencies between his deposition testimony and his errata sheet, neither of these concerns render Conlan's expertise insufficient or nonexistent.  Instead, as plaintiffs' point out, notwithstanding his educational background, Mr. Conlan, a licensed electrician, has extensive experience in the field of electrical consulting and in investigating and testifying in cases involving malfunctioning and defective fan motors.  (*See* Pls. Mem. of Law at 9-10, Dkt. No. 64.)  As to the alleged testimonial inconsistencies, defendants correctly assert that FED. R. CIV. P. 30(e) requires a deponent to provide the "reasons for making" any changes to his testimony, and that a failure to do so may render the changes inoperative

8

or subject to disregard.  *See Architectural League of N.Y. v. Bartos*, 404 F.

Supp. 304, 311 n.7 (S.D.N.Y. 1975).  However, in light of the fact that

Conlan's statements in his errata sheet are not necessarily inconsistent

with his deposition testimony but rather clarify and supplement his tentative

recollections, (*compare* Alweis Aff., Ex. N, Conlan Dep. at 24-25, Dkt. No.

48:2, *with* Coffey Aff., Ex. O, Conlan Errata Sheet at 1, Dkt. No. 59:6), the

court declines to disregard Conlan's proffered experience on a mere

technicality.  *See Bongiovanni v. N. V. Stoomvaart-Maats "Oostzee"*, 458

F. Supp. 602, 605 n.4 (S.D.N.Y. 1978); *see also Podell v. Citicorp Diners

Club, Inc.*, 112 F.3d 98, 103 (2d Cir. 1997) (noting that Rule 30 does not

"require a judge to examine the sufficiency, reasonableness, or legitimacy

of the reasons for the changes—even if those reasons are unconvincing"

(internal quotation marks and citation omitted)).  Should defendants wish to

inquire into the reason for Conlan's failure to accurately recollect the extent

of his past involvement in cases involving fan motors—which they are

entitled to—or otherwise challenge Conlan's credibility or the caliber of his

qualifications, they may do so by voir dire or cross-examination of Conlan.

*See Podell*, 112 F.3d at 103.

     With regard to the substance of and basis for Mr. Conlan's proposed

testimony, the court is presently satisfied that his opinion is based on his
direct exposure to the facts and examination of the fan/light in question, is
the product of reliable principles and methods, and is the result of a reliable
application of these principles to the facts.  *See* FED. R. EVID. 702; *see also*
*Nimely*, 414 F.3d at 395-96.  As outlined by plaintiffs, Conlan followed an
established protocol in inspecting and unwinding the fan motor, and, by
comparing it with two exemplar motors, found that the subject fan motor
contained a manufacturing defect in the form of wires intercrossed in the
shape of a "J."  (*See* Pls. Resp. Mem. of Law at 11-13, Dkt. No. 64.)  And
based on his observations, findings, and experience, and in reliance on the
NFPA 921, Conlan opines that arc tracking and electrical arcing occurred
across the aluminum windings, giving rise to abnormally high temperatures
which ignited the dust and lint that had accumulated in the motor and the
plastic components of the fan.  (*See* Conlan Aff. at ¶ 25 & Exs. B, C, Dkt.
Nos. 66, 67:1, 67:3.)  Conlan further concluded that the fire did not begin
outside of the motor since the significant fire damage was localized under
the windings at the site of the spool.  (*See id.* at ¶¶ 60-62.)  The record
provides no grounds from which to conclude that Mr. Conlan's invasive
inspection was performed in abrogation of accepted protocol, that his

observations and findings were inaccurate or mistaken, that he misapplied the relevant principles and methods to the facts, or that he reached unreasonable conclusions.

Lastly, insofar as defendants argue that the principles Mr. Conlan applied were unreliable or suspect, the court rejects this argument. While defendants implicitly concede that the NFPA 921 is authoritative in the area of fire investigations, they posit that because "[m]ore study is needed to more clearly define the conditions" necessary for arc tracking to cause a fire, the theory of arc tracking is simply that, an unproven, unaccepted theory. (*See* Defs. Mem. of Law at 11-12, Dkt. No. 42:2 (quoting NFPA 921 § 8.9.4.5.2 (2008)).) The court is disinclined to hold the same position in light of the qualitative treatment given to arc tracking by the NFPA, and because the cautionary language referenced by defendants appears to be textually limited to instances of arcing that occurs in the presence of water or moisture. The fact that Conlan himself has not conducted tests on arc tracking does not render the principle any less reliable; nor does it automatically subject the his opinion to preclusion.

Therefore, at this stage, the court denies defendants' motion to preclude Mr. Conlan from testifying as an expert. However, foreseeing

11

defendants' continued preoccupation with Mr. Conlan's qualifications to testify about manufacturing defects, the court advises defendants that they are not foreclosed from renewing their challenge prior to or at trial.  In addition, to the extent plaintiffs or Mr. Conlan are attempting to introduce additional theories or claims never before asserted prior to or during discovery, (*see* Defs. Reply Mem. of Law at 2-3, Dkt. No. 74), such attempts will not be permitted.

## B.   Spoliation

Defendants next contend that plaintiffs' complaint should be dismissed because defendants failed to preserve the fire scene and critical pieces of evidence.  (*See* Defs. Mem. of Law at 16-18, Dkt. no. 42:2.)  This contention has no merit.

A party is obligated to preserve evidence in its possession and not engage in spoliation[1] when it "has notice that the evidence is relevant to litigation ... [or] when a party should have known that the evidence may be relevant to future litigation."  *Kronisch v. United States*, 150 F.3d 112, 126-27 (2d Cir. 1998) (citations omitted), *overruled on other grounds*, *Rotella v.*

---

[1]"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."  *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999) (citation omitted).

*Wood*, 528 U.S. 549 (2000).  Thus, every party has "a duty to preserve

what it knows, or reasonably should know, is relevant in the action, ... is

reasonably likely to be requested during discovery and/or is the subject of a

pending discovery request." *Turner v. Hudson Transit Lines, Inc.*, 142

F.R.D. 68, 72 (S.D.N.Y. 1991) (internal quotation marks and citation

omitted).

A district court has "broad discretion in crafting a proper sanction for

spoliation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d

Cir. 1999).  However, "the applicable sanction should be molded to serve

the prophylactic, punitive, and remedial rationales underlying the spoliation

doctrine." *Id.* (citation omitted).  More specifically, a spoliation sanction

"should be designed to: (1) deter parties from engaging in spoliation; (2)

place the risk of an erroneous judgment on the party who wrongfully

created the risk; and (3) restore the prejudiced party to the same position

he would have been in absent the wrongful destruction of evidence by the

opposing party." *Id.* (internal quotation marks and citations omitted).

Among the permissible sanction options available to a court faced

with the spoliation of evidence is the "outright dismissal of [the plaintiff's]

lawsuit." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991) (citation

omitted).  That sanction, however, is a "drastic remedy" that "should  be imposed only in extreme circumstances, usually after consideration of alternative, less drastic sanctions."  *John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.*, 845 F.2d 1172, 1176-77 (2d Cir. 1988) (internal quotation marks and citations omitted).  Indeed, dismissal is appropriate only "if there is a showing of willfulness, bad faith, or fault on the part of the sanctioned party." *West*, 167 F.3d at 779 (citation omitted).

Here, defendants contend that dismissal of the complaint is appropriate because "plaintiffs preserved only that evidence that they believed would establish their theory of liability" and "did not collect the other evidence ... that might have established an alternative cause."  (Pls. Mem. of Law at 17, Dkt. No. 42:2.)  These vague allegations, without more, are insufficient to establish that plaintiffs engaged in spoliatory conduct warranting sanctions, much less the extreme sanction of dismissal. Accordingly, defendants' request for dismissal on this basis is denied. Defendants further contend that plaintiffs spoliated evidence because "there was no proper chain of custody of the remains of the fan/light and the motor."  (*Id.* at 18.)  As plaintiffs' correctly point out, however, defendants have made no showing that the remains of the fan/light and

14

motor were in any way compromised, or that the alleged failure to ensure a

proper chain of custody was the result of bad faith or willful or negligent

conduct.  Consequently, because this argument also  lacks merit,

defendants' spoliation claim must fail.

## C.     Breach of Warranty Claim

Defendants next seek dismissal of plaintiffs' claim for breach of

warranty as untimely.  (*See* Pl. Mem. of Law at 20, Dkt. No. 42:2.)  Claims

for breach of express and implied warranty are subject to the Uniform

Commercial Code's four year statute of limitations.  *See Heller v. U.S.*

*Suzuki Motor Corp.*, 64 N.Y.2d 407, 410 (N.Y. 1985); *Rosen v.*

*Spanierman*, 894 F.2d 28, 31 (2d Cir. 1990).  This limitations period begins

to run at the time of the breach, "which occurs when tender of delivery is

made."  U.C.C. § 2-275(2).  In this case, while it is not clear when the

fan/light was delivered to the company that built the Barber home, it is

undisputed that the home was built and the fan/light installed in 2000.

Accordingly, because this action was not commenced until 2008, plaintiffs'

claim for breach of warranty is dismissed as time barred.

## D.     Strict Products Liability

Under the doctrine of strict products liability, in order to maintain an

15

action against the manufacturer of a defective product, a plaintiff must

establish that "the defect was a substantial factor in bringing about his

injury or damages."  *Codling v. Paglia*, 32 N.Y.2d 330, 342 (N.Y. 1973).  In

doing so, the plaintiff is required to make a threshold showing:

> (1) that at the time of the occurrence the product [was] being
> used ... for the purpose and in the manner normally intended,
> (2) that ... the user of the product ... would not by the exercise
> of reasonable care have both discovered the defect and
> perceived its danger, and (3) that by the exercise of reasonable
> care the person injured or damaged would not otherwise have
> averted his injury or damages.

*Id.*  New York law provides several bases upon which strict products

liability may rest.  "[A] plaintiff may assert that the product is defective

because of a mistake in the manufacturing process or because of an

improper design or because the manufacturer failed to provide adequate

warnings regarding the use of the product."  *Voss v. Black & Decker Mfg.

Co.*, 59 N.Y.2d 102, 106-07 (N.Y. 1983) (citations omitted).

To make out a prima facie case of strict liability for a manufacturing

defect, "a plaintiff must establish that the product was not built to

specification or that it did not conform to the manufacturer's intended

design."  *Minda v. Biomet, Inc.*, 182 F.3d 900, 900 (2d Cir. 1999)

(unpublished) (citing *Van Deusen v. Norton Co.*, 204 A.D.2d 867, 868 (3d

16

Dep't 1994)).  "[The] plaintiff may rely upon the circumstances of the

accident and proof that the product did not perform as intended." *Brown v.*

*Borruso*, 238 A.D.2d 884, 885 (4th Dep't 1997) (citations omitted).  In other

words, if the plaintiff proves that the product did not perform as intended

and has excluded all causes that are not attributable to the manufacturer's

conduct, then "the fact finder may, even if the particular defect has not

been proven, infer that the accident could only have occurred due to some

defect in the product or its packaging." *Halloran v. Va. Chems. Inc.*, 41

N.Y.2d 386, 389 (N.Y. 1977) (citations omitted).

In turn, the manufacturer must establish that a manufacturing defect

in the product did not cause the injuries alleged.  *Brown*, 238 A.D.2d at

885.  Ultimately, though, if the manufacturer presents evidence that the

accident was "not necessarily attributable to a defect," *Winckel v. Atl.*

*Rentals & Sales, Inc.*, 159 A.D.2d 124, 127 (2d Dep't 1990), the plaintiff

has the burden "to demonstrate the existence of a triable issue as to

whether in fact there was a defect," *Minda*, 182 F.3d at 900.  To meet this

burden, the plaintiff "must submit some direct evidence that a defect

existed ... [and] cannot rely solely upon the occurrence of the accident."

*Brown*, 238 A.D.2d at 885.

17

Here, there is sufficient evidence from which a reasonable jury could find—or at minimum infer—that defendants manufactured a bathroom fan/light that was not built to specification, that it did not conform to the intended design, and that the defective fan/light was a substantial factor in causing the September 12, 2005 fire. Specifically, plaintiffs have offered evidence and testimony demonstrating that the fan/light contained a manufacturing defect in the form of intercrossed wires, that the defect generated an inordinate amount of heat that ignited the debris and plastic present in the fan motor, and that the fire originated at the site of the defect. Based on the current record, and in the absence of any alternative explanation for the fire,[2] it is for the jury to resolve the extent to which other potential causes can be excluded and whether a defect actually existed. Therefore, defendants' motion for summary judgment is denied.

## V.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendants' motion for summary judgment (Dkt. No.

---

[2]The fact that the subject fan motor was of a class that was subjected to testing and was formally recognized by Underwriters Laboratories Inc., and that the motor was then subjected to rigorous pre- and post-installation testing, (*see* Duncan Aff. ¶¶ 10-12, Dkt. No. 54 (filed under seal); Frisse Decl. ¶¶ 7-16, Dkt. No. 55 (filed under seal)), does not dispel the possibility of a manufacturing defect or otherwise dispose of this case.

42) is **GRANTED** insofar as plaintiffs' claim for breach of warranty is

**DISMISSED**; and it is further

ORDERED that defendants' motion for summary judgment (Dkt. No.

42) is **DENIED** as to the remaining claims; and it is further

ORDERED that defendants' motion to preclude plaintiffs' experts

(Dkt. No. 42) is **DENIED**; and it is further

ORDERED that defendants' motion for sanctions based on spoliation

(Dkt. No. 42) is **DENIED**; and it is further

ORDERED that the Clerk provide a copy of this Memorandum-

Decision and Order to the parties.

**IT IS SO ORDERED.**

August 23, 2011
Albany, New York

Gary L. Sharpe
U.S. District Judge